IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LISA SALLAJ,

        *Plaintiff,*

vs.

        Case No. 23-CV-01172-EFM-BGS

MICHEL A. FEINER, et al.,

        *Defendants.*

**MEMORANDUM AND ORDER**

Before the Court is Defendants' Michael A. Feiner, Steingner, Greene & Feiner, Steigner, Iscoe & Greene P.A., Michael S. Steinger, Steinger & Iscoe, P.A., and Sean J. Greene Motion to Dismiss for Lack of Personal Jurisdiction and Venue (Doc. 19). Defendants ask the Court to dismiss pro se Plaintiff Lisa Sallaj's claims because the Court lacks personal jurisdiction over Defendants and venue in the United States District Court for the District of Kansas is improper. In response, Plaintiff asks the Court to deny the motion because Defendants' contacts with the State of Kansas are sufficient to establish personal jurisdiction and venue is proper as parts of the event giving rise to the claims occurred in Kansas.

For the following reasons, the Court does not have personal jurisdiction over the Defendants and grants Defendants' Motion. Because the Court grants dismissal for lack of personal jurisdiction, it need not determine whether dismissal is appropriate for improper venue.

## I.     Factual and Procedural Background

This case arises out of a written agreement between Plaintiff and Steinger, Greene & Feiner[1] ("Law Firm") for legal representation relating to potential personal injury claims against Plaintiff's apartment complex. Plaintiff's apartment complex is located in Tennessee. On March 3, 2022, Plaintiff entered into a written agreement for legal representation with the Law Firm. The agreement was signed by Plaintiff and the Law Firm.[2] In the agreement the Law Firm promised Plaintiff that she would receive the "best professional skill in the furtherance of representation." The correspondence accompanying the written agreement lists Tennessee addresses for Plaintiff and the Law Firm.

After Plaintiff and the Law Firm signed the written agreement, Plaintiff visited several medical care providers and a physical therapist. The medical care providers and the physical therapist are all located in Tennessee. Plaintiff gave a Tennessee address to the medical care providers and the physical therapist. The referrals and appointments to the medical care providers and physical therapist were made by the Law Firm and medical liens were arranged.

---

[1] Plaintiff asserts that Defendants Steinger, Greene & Feiner LLP, Steinger, Iscoe & Greene P.A., and Steinger & Iscoe, P.A. are all the same organization that regularly "change[s] from LLC to LLP and to P.A." Additionally, Defendants Michael A. Feiner, Michael S. Steinger, and Sean J. Greene are "named partners" for the organization.

[2] The signature mark on the written agreement does not legibly identify the attorney who signed the agreement, and the Plaintiff only identifies the attorney as "the lawyer" throughout the Amended Complaint. However, the correspondence accompanying the written agreement is electronically signed by Defendant Michael A. Fiener.

Plaintiff was allegedly told by "the lawyer"[3] to continue going to physical therapy sessions even though Plaintiff repeatedly told the Law Firm that physical therapy made the pain worse. Plaintiff also alleges that the Law Firm suggested and insisted that she get additional steroid injections and continue treatment of the injury. Over $75,000.00 in medical liens were accrued throughout Plaintiff's treatment.

During a phone call, "the lawyer" told Plaintiff that "he planned on dropping the case and that [Plaintiff] no longer had time to find another lawyer." On October 5, 2022, Plaintiff received an email ("Termination notification email") from the Law Firm notifying her that they would no longer be representing her.

Plaintiff proceeded pro se and filed a civil case against her apartment complex in the United States District Court for the Middle District of Tennessee on October 24, 2022. Before trial, Plaintiff and the apartment complex settled, and the Settlement Agreement and Release was filed on May 19, 2023. The apartment complex sent the settlement payment to Plaintiff at a Kansas address.

On August 21, 2023, Plaintiff filed a Complaint against Defendants in the United States District Court for the District of Kansas. An Amended Complaint was filed on August 28, 2023. Plaintiff alleges Defendants: (1) breached their contract; (2) committed legal malpractice by breaching their fiduciary duty; and (3) committed legal malpractice by being negligent in their legal representation. Now, Defendants move to dismiss the case for lack of personal jurisdiction under Fed. Civ. P. Rule 12(b)(2) and for improper venue under Fed. Civ. P. Rule 12(b)(3).

---

[3] Plaintiff never refers to "the lawyer" by name.

Defendants attached the affidavit of Michael R. Small, an associate attorney at the Law Firm, to their Motion. The affidavit asserts that the Law Firm did not know that Plaintiff changed her residency from Tennessee to Kansas and that a change of address was not provided to them by Plaintiff. Also, the affidavit states that all legal work and case preparation occurred in Tennessee, Plaintiff's claims arose in Tennessee, Plaintiff received all medical services in Tennessee, none of the individual Defendants visited Plaintiff in Kansas to work on the case, the Law Firm has not solicited legal services in Kansas, and the Law Firm ceased representing Plaintiff in Tennessee. Plaintiff's Response addresses the arguments made by Defendants; however, Plaintiff does not attach any affidavits with her Response.

## II.   Legal Standard

### A.   Motion to Dismiss

Under Rule 12(b)(2), a defendant may move for dismissal of any claim in which there is no personal jurisdiction.[4] A plaintiff opposing a motion to dismiss based on a lack of personal jurisdiction bears the burden of showing that jurisdiction over the defendant is appropriate.[5] A plaintiff must make a prima facie showing that personal jurisdiction is proper to avoid dismissal.[6] Once the plaintiff makes a prima facie showing, the defendant "must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.' "[7]

---

[4] Fed. R. Civ. P. 12(b)(2).

[5] *Thermal Components Co. v. Griffith*, 98 F. Supp. 2d 1224, 1227 (D. Kan. 2000) (citing *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir. 1996)).

[6] *Id*.

[7] *Id*. at 1227 (quoting *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998)).

The court views the allegations in the complaint as true if they are uncontroverted by the defendant's affidavits.[8] "If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party."[9] "However, only the well pled facts of [the] plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true."[10] The plaintiff must support its jurisdictional allegations in a "complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading."[11]

**B.   Pro se Litigants**

Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers."[12]  A pro se litigant is entitled to a liberal construction of his pleadings.[13]  If a court can reasonably read a pro se complaint in such a way that it could state a claim on which it could prevail, it should do so despite "failure to cite proper legal authority . . . confusion of various legal theories . . . or [plaintiff's] unfamiliarity with pleading requirements."[14]  However, it is not the proper role of a district court to "assume the role of advocate for the pro se litigant."[15]  As it relates to motions to dismiss generally, the court "accept[s] the well-pleaded allegations of the complaint

---

[8] *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

[9] *Id*. (internal quotations and citations omitted).

[10] *Id*. (citations omitted).

[11] *Id*. at 1508 (quoting *Pytlik v. Pro. Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989)).

[12] *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

[13] *See Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007) ("Because Mr. Trackwell appears pro se, we review his pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys.").

[14] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[15] *Id.*

as true and construe[s] them in the light most favorable to the plaintiff."[16] "Well-pleaded" allegations are those that are facially plausible such that "the court [can] draw the reasonable inference[s] that the defendant is liable for the misconduct alleged."[17]

### III.     Analysis

**A.     Personal Jurisdiction**

Defendants move to dismiss Plaintiff's claims asserting that the Court does not have personal jurisdiction over them. The Court determines personal jurisdiction over parties using the law of the forum state.[18] To establish whether the Court has personal jurisdiction over Defendants, Plaintiff must show that the exercise of jurisdiction is (1) legitimate under the state's long-arm statute, and (2) comports with the Due Process Clause of the Fourteenth Amendment.[19] Because the Kansas Supreme Court interpreted the Kansas long-arm statute to extend jurisdiction to the fullest extent allowed under the Due Process Clause of the Fourteenth Amendment,[20] the Court need not conduct a statutory analysis and may proceed directly to the due process analysis.[21]

The Due Process Clause requires "that the out-of-state defendant both 'purposefully established minimum contacts within the forum State' and that the 'assertion of personal jurisdiction would comport with fair play and substantial justice.' "[22] The defendants contacts with

---

[16] *Ramirez v. Dep't of Corr., Colo.*, 222 F.3d 1238, 1240 (10th Cir. 2000).

[17] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[18] *Kesters Merch. Display Int'l, Inc. v. Surfacequest, Inc.*, 2022 WL 1489658, at *3 (D. Kan. 2022).

[19] *Klein v. Cornelius*, 786 F.3d 1310, 1317 (10th Cir. 2015) (citation omitted*); Kuenzle*, 102 F.3d at 455.

[20] *Merriman v. Crompton Corp.*, 282 Kan. 433, 146 P.3d 162, 179 (2006) (citation omitted).

[21] *See Leichty v. Bethel Coll.*, 2019 WL 5549167, at *14 (D. Kan. 2019) (citing *Schrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011)).

[22] *C5 Med. Werks, LLC v. CeramTec GMBH*, 937 F.3d 1319, 1322 (10th Cir. 2019) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

the forum state may give rise to either general or specific jurisdiction.[23] "If a court determines that the minimum contacts standard is satisfied, it next assesses whether 'exercising personal jurisdiction over defendants' would otherwise 'be consonant with traditional notions of fair play and substantial justice,' in order to fully satisfy due process requirements."[24]

Here, Plaintiff does not contend that the Court has general jurisdiction over Defendants, and the Court does not otherwise find the exercise of general jurisdiction over Defendants is appropriate. Therefore, the Court limits its analysis to the issue of specific personal jurisdiction.

  *1.     Specific jurisdiction*

Plaintiff asserts that Defendants had sufficient contacts with the State of Kansas to support the Court exercising specific jurisdiction over them. A court may exercise specific jurisdiction under the minimum contacts test if two elements are met: (1) the out-of-state defendant "purposefully directed" its activities toward the forum state and (2) the plaintiff's injuries "arise out of" the defendant's purposefully directed activities.[25]

The "purposeful direction" requirement ensures that "an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state."[26] The relationship between the defendant and the forum must arise from contacts that the "*defendant himself*" created with the forum [state]."[27] "The analysis must focus on 'the defendant's contacts with the forum' and not merely the defendant's contacts 'with persons who reside

---

[23] *Old Republic Ins. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017).

[24] *Eighteen Seventy, LP v. Jayson*, 32 F.4th 956, 966 (10th Cir. 2022) (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2009)) (further citations omitted).

[25] *Burger King*, 471 U.S. 462, 472 (1985) (citations omitted).

[26] *Dudnikov*, 514 F.3d at 1071 (quoting *Burger King*, 471 U.S. at 475).

[27] *Kesters*, 2022 WL 1489658, at *4 (quoting *Walden v. Fiore*, 571 U.S. 277, 284–85 (2014)).

there.' "[28] "Mere foreseeability of causing injury" in the forum state does not satisfy purposeful direction.[29]

The Tenth Circuit identified several frameworks for determining whether an out-of-state defendant's contacts with the forum satisfy the "purposeful direction" requirement, including the effects test.[30] The effects test "analyzes whether an out-of-state defendant's tortious conduct satisfies three elements: '(1) an intentional action; (2) expressly aimed at the forum state; and (3) . . . knowledge that the brunt of the injury would be felt in the forum state.' "[31] "[P]laintiffs must demonstrate each element of the effects test to satisfy the purposeful direction standard; that is, plaintiff's failure to establish even one of the elements will doom their showing of purposeful direction."[32]

Defendants argue that Plaintiff fails to make a prima facie showing for each of the three elements of the effects test. Accepting Plaintiff's allegations as true, the Court finds that Plaintiff fails to make a prima facie showing that the Defendants' actions were expressly aimed at the State of Kansas.

---

[28] *Id.* (further citation omitted).

[29] *Old Republic*, 877 F.3d at 905 (citing *Burger King*, 471 U.S. at 474).

[30] *Eighteen Seventy, LP*, 32 F.4th at 966–67 (discussing *Calder v. Jones*, 465 U.S. 783 (1984)); *see Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1229 n.3 (10th Cir. 2020) (noting that applying the effects test to tort-based claims in a mixed tort and contract case the terms "purposeful availment" and "purposeful direction" are interchangeable).

[31] *Eighteen Seventy, LP*, 32 F.4th at 966–67 (further quotations and citation omitted).

[32] *Id.* at 967 (citations omitted).

      a. Intentional action

"The intentional action element requires little discussion."[33] Allegations of a defendant's intentional tortious act easily satisfy the first element.[34]

Here, Plaintiff alleges Defendants failed to perform their obligation of filing a lawsuit against Plaintiff's apartment complex, terminated Plaintiff as a client without providing justification, ignored Plaintiff's multiple requests for documents complied by Defendants during their course of representation, and mandated continued treatment which caused Plaintiff chronic pain. These allegations of Defendants' intentional conduct are sufficient to satisfy the first element. Defendants argue that Plaintiff fails to meet the intentional action element because she does not allege their acts were directed toward Kansas. However, arguments of where the action was directed are examined under the expressly aimed element of the effects test. Thus, the Court finds Plaintiff made a prima facie showing of the intentional action element. The Court now turns to the expressly aimed element.

      b. Expressly Aimed

Under the second element, a defendant's actions "must be 'expressly aimed' at the forum state."[35] The jurisdictional analysis of whether a defendant expressly aimed his conduct at the forum state must not be driven by "a plaintiff's contacts with the defendant and forum."[36] "[T]he plaintiff cannot be the only link between the defendant and the forum."[37]

---

[33] *Newsome v. Gallacher*, 722 F.3d 1257, 1268 (10th Cir. 2013).

[34] *Eighteen Seventy, LP*, 32 F.4th at 968 (finding that adequate allegations of intentional tortious conduct meet the intentional action element) (citations omitted).

[35] *Id*. at 968–69 (quoting *Calder*, 465 U.S. at 789).

[36] *Walden*, 571 U.S. at 289.

[37] *Id*. at 285.

Instead, the "focal point" of the defendant's conduct must be the forum state.[38] " '[T]he defendant's conduct must connect him to the forum [state] in a meaningful way.' "[39] By itself, a defendant's knowledge of a plaintiff's connection to a forum state is not enough to satisfy the second element of the effects test.[40] Additionally, mere injury to a plaintiff residing in the forum state does not meaningfully connect a defendant to the forum state.[41] Further, the Tenth Circuit held that "an out-of-state attorney working from out-of-state on an out-of-state matter does not purposefully avail himself of the client's home forum's laws and privileges, at least not without some evidence that the attorney reached out to the client's home forum to solicit the client's business."[42]

In the case at hand, a careful review of the Amended Complaint reveals that all relevant circumstances took place in Tennessee. This includes the matter for which Plaintiff sought representation, the address on the correspondence accompanying the written agreement for representation, and the medical care providers' and the physical therapist's documentation of Plaintiff's address. The only allegations that relate to the forum state are Plaintiff's statement that she resides in Kansas and that the settlement payment from Plaintiff's Middle District of Tennessee case was sent to Plaintiff at a Kansas address. These statements focus on Plaintiff's own contacts with Kansas, which is not enough to make a prima facie showing of the expressly aimed element.

---

[38] *Newsome*, 722 F.3d at 1268.

[39] *Eighteen Seventy, LP*, 32 F.4th at 969 (quoting *Walden*, 571 U.S. at 290) (alterations omitted).

[40] *Id*. at 970.

[41] *Id*. at 971 (quoting *Walden*, 571 U.S. at 291).

[42] *Newsome*, 722 F.3d at 1280–81 (finding a law firm's sole tortious acts of facilitating the placement of liens on Oklahoma property and receiving payments from Oklahoma bank accounts are not enough to satisfy the express aiming requirement).

Even if Plaintiff's allegations were sufficient, Defendants presented an affidavit attached to their Motion that disputes any remote inference that Defendants' conduct was expressly aimed toward Kansas. The affidavit asserts that the Law Firm did not know that Plaintiff changed her residency from Tennessee from Kansas, all legal work and case preparation occurred in Tennessee, Plaintiff received all medical services in Tennessee, and the Law Firm has not solicited legal services in Kansas. Plaintiff argues in her Response that the phone calls and emails from Defendants are enough to invoke personal jurisdiction because Defendants knew she resided in Kansas at the time they terminated representation. Assuming arguendo that Defendants knew Plaintiff resided in Kansas when they contacted her, it is still not enough to meet the expressly aimed element. The Law Firm's phone calls and emails to Plaintiff concerned a matter that occurred in Tennessee. Thus, the correspondence does not meaningfully connect Defendants to Kansas.

Additionally, Plaintiff argues that this Court can invoke personal jurisdiction because Plaintiff feels the brunt of the injury caused by Defendants in Kansas. As with Plaintiff's other arguments, this ignores the legal standard for establishing whether a defendant's conduct was expressly aimed at a forum state. The fact remains that Defendants did not solicit legal services in Kansas. It was Plaintiff who found the Law Firm to represent her in the Tennessee matter. Thus, Defendants' conduct was directed at Plaintiff regardless of where Plaintiff resided. Consequently, Plaintiff bearing the injury from Defendants' conduct, without more, does not meaningfully connect Defendants to Kansas. As a result, Plaintiff fails to make a sufficient showing of the express aiming requirement—a failure that is fatal to Plaintiff's allegations of personal jurisdiction over Defendants.

For the reasons above, Defendants do not have the minimum contacts necessary to support the exercise of specific jurisdiction over them. As such, the Court need not determine whether the exercise of personal jurisdiction over Defendants would offend traditional notions of fair play and substantial justice. Therefore, the Court grants Defendants' Motion. Because the Court grants dismissal for lack of personal jurisdiction, it need not determine whether dismissal is appropriate for improper venue.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Venue (Doc. 19) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Transfer Case (Doc. 38) is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Dated this 22nd day of January, 2024.

This case is closed.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE